# Motion to Vacate, Set Aside, or Correct a Sentence
## By a Person in Federal Custody

### (Motion Under 28 U.S.C. § 2255)

### Instructions

1. To use this form, you must be a person who is serving a sentence under a judgment against you in a federal court. You are asking for relief from the conviction or the sentence. This form is your motion for relief.

2. You must file the form in the United States district court that entered the judgment that you are challenging. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file the motion in the federal court that entered that judgment.

3. Make sure the form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit any legal arguments, you must submit them in a separate memorandum. Be aware that any such memorandum may be subject to page limits set forth in the local rules of the court where you file this motion.

6. If you cannot pay for the costs of this motion (such as costs for an attorney or transcripts), you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you.

7. In this motion, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different judge or division (either in the same district or in a different district), you must file a separate motion.

8. When you have completed the form, send the original and _____ copies to the Clerk of the United States District Court at this address:

Clerk, United States District Court for
Address
City, State  Zip Code

If you want a file-stamped copy of the petition, you must enclose an additional copy of the petition and ask the court to file-stamp it and return it to you.

9. **CAUTION:** **You must include in this motion all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this motion, you may be barred from presenting additional grounds at a later date.**

10. **CAPITAL CASES:** **If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.**

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District | NORTHERN DISTRICT, GAINESVILLE | |
|---|---|---|---|
| Name *(under which you were convicted)*: <br> JAMES FARRELL WILKERSON | | | Docket or Case No.: <br> 1:19cr27 |
| Place of Confinement: <br> FCI COLEMAN MEDIUM | | Prisoner No.: <br> 26627-017 | |
| UNITED STATES OF AMERICA | v. | Movant *(include name under which convicted)* <br> JAMES FARRELL WILKERSON | |

## MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:

    UNITED STATES DISTRICT COURT, NORTHERN DISTRICT, GAINESVILLE DIVISION
    401 SE FIRST AVENUE, GAINESVILLE, FLORIDA 32601

    (b) Criminal docket or case number (if you know): 1:19-cr-00027-AW-GRJ

2.  (a) Date of the judgment of conviction (if you know): 12/4/2020

    (b) Date of sentencing: 12/1/2020

3.  Length of sentence: 235 months imprisonment, followed by 5 years supervised release

4.  Nature of crime (all counts):

    Possession of Firearm by Convicted Felon

5.  (a) What was your plea? (Check one)
    (1) Not guilty ☑    (2) Guilty ☐    (3) Nolo contendere (no contest) ☐

6.  (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6.  If you went to trial, what kind of trial did you have? (Check one)    Jury ☑    Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

8. Did you appeal from the judgment of conviction?  Yes ☑  No ☐

9. If you did appeal, answer the following:

(a) Name of court:  United States Court of Appeal, Eleventh Circuit

(b) Docket or case number (if you know):  20-14727

(c) Result:  Affirmed (non-published)

(d) Date of result (if you know):  5/16/2022

(e) Citation to the case (if you know):  U.S. v. Wilkerson, 2022 WL 1537315 (11th Cir., May 16, 2022)

(f) Grounds raised:

1. The district courrt erred in denying Petitioner's motion for judgment of acquittal and renewed motion for judgment of acquittal when the evidence presented was insufficient to sustain a conviction; and
2. The district court committed numerous sentencing errors that require the Petitioner be resentenced.

(g) Did you file a petition for certiorari in the United States Supreme Court?  Yes ☐  No ☑

If "Yes," answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

(5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
    Yes ☐  No ☑

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding: _____

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____

(2) Docket of case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:        Yes ☐        No ☐

(2) Second petition:      Yes ☐        No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** PETITIONER RECEIVED INEFFECTIVE COUNSEL AS A RESULT OF COUNSEL'S FAILURE TO PRESENT EVIDENCE AT TRIAL IN SUPPORT OF HIS THEORY OF INNOCENCE

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The Petitioner's theory of innocence at trial was that he was not in possession of the firearm and the only reason a small source of his DNA was on said firearm, was because of DNA transfer or contamination. The government's case against him was based entirely on circumstantial evidence, as the gun was found in the vicinity of where Petitioner was arrested, but not in his physical possession. During pretrial investigations, trial counsel filed a Motion to Compel Discovery, seeking to compel the DNA sample of Detective Pandak because there were three contributors to the DNA sample tested from the firearm. The government opposed the motion and the district court ultimately denied the motion. At trial, the defense presented testimony about DNA transfer and contamination, in support of its theory. But the main question that would run through any reasonable jurors mind is why? Why would law enforcement want the Petitioner to be guilty of this crime so badly, as to go through this type of lengths to get a conviction? The answer is William Redd and Willie Brooks. Petitioner was a witness to a murder in a state case that previously had been considered a cold case for several years. When arrests were finally made, and indictments were filed in the state case, the Petitioner was originally listed as a witness. He had a pending state charge in Alachua County at the time, that was dismissed on July 15, 2013. Thereafter, on March 10, 2014, the charges were refiled (Trafficking in Cocaine) and Petitioner was re-arrested. Later, in May of 2015, a motion to suppress was filed and granted - resulting in the charges being dismissed with prejudice. Upon that time, the Petitioner decided that he did not want to risk his life by cooperating ... (continued on next page)

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Claims alleging ineffective counsel are not appropriate for appellate review and are lawfully raised in a postconviction proceeding, such as the instant pleading.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

… and rejected the offer to do so in the murder case. He had only considered cooperating because of the pending charge, and law enforcement knew it. When the case was dismissed and he decided not to cooperate, law enforcement told him that he would regret that decision. For the next few years, Petitioner was able to stay out of trouble and out of their way but ultimately, on October 30, 2018, his luck ran out. On October 30, 2018, Detective John Pandak with the Gainesville Police Department ran into an opportunity to satisfy many goals when he responded to an area about an alleged shooting and found Petitioner in a location where it would be easy to place a firearm in a place that Petitioner could have been in constructive possession of it. Not only would this provide an opportunity to arrest and lock up someone who had escaped the law before (when his motion to suppress was granted and the charges were thrown out), but it would provide leverage to try and convince Petitioner to become a witness in the murder case. On February 5, 2019, the Information was charged in Alachua County case number 2018-CF-3744 for one count of Possession of Firearm, one count of Possession of a Firearm with Serial Number Altered or Removed, one count of Possession of Cannabis and one count of Resisting Officer Without Violence. The Petitioner was represented by appointed counsel in his state case and the majority of their conversations centered around whether Petitioner would cooperate in the murder case – which was still pending four years after his other case was dropped. Again, Petitioner was not open to cooperating. The prosecuting Assistant State Attorney at the time that the murder case was opened was none other than Christopher Elsey. On August 27, 2019, Petitioner was charged in the instant case – based on the same facts in the State case. The Indictment was signed by Attorney Christopher Elsey. Pursuant to a letter filed in case number 8:20-mc-00071, <u>In re: Appointment of Special Assistant United States Attorney Christopher M. Elsey</u>, the Honorable Judge William F. Jung appointed Elsey as an AUSA on **August 29, 2019** – confirmed by an affidavit signed by Elsey on the same date. Ironically, the Indictment in this case was filed on August 27, 2019 and signed by "AUSA Christopher Elsey." Per the special appointment, Elsey was only to be appointed to the office for one year and he could request extensions. His appointment was extended until 2021 – once Petitioner's case had come to a close. Ironically, from the first day of the federal prosecution, Petitioner was again bombarded with the questions about whether he would cooperate in the murder case. His initial federal defender advised him that it would be in his best interest, and this could all go away;

followed by his later trial counsel advising him of the same. Petitioner was not interested, as he was more focused on protecting himself and his family. Trial counsel was aware of this underlying motivation – i.e., the only potential way that Petitioner might want to cooperate in this critical case was if there was a case pending against him, that was so bad and had consequences so great, that he saw no other choice. That was what this case was – an opportunity for leverage to secure him as a witness. It is the answer to the "why" likely running through the jurors minds at the time of his trial. it is the answer to the why that trial counsel should have presented to the jury. Counsel was aware of the facts but failed to present this to the jury, resulting in Petitioner's conviction. It should be noted that originally, in the murder case, the State had filed a Notice of Intent to Seek Death Penalty and Disclosure of Aggravating Factors. Pursuant to the notice, two of the factors supporting the death penalty were: "the capital felony was committed for the purposes of avoiding or preventing a lawful arrest or effecting an escape from custody" and "the capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws." It was alleged that the murder took place because the suspect did not want the victim to testify against him in an unrelated matter (aka why Petitioner was so alarmed and concerned to become a witness). The death penalty notice was filed on April 12, 2016. When the Petitioner's appeal in this case was affirmed by the 11th Circuit, a final attempt was made for Petitioner to cooperate in the murder case (which was still open) but Petitioner ultimately rejected the opportunity. The request was made by Elsey in June of 2022. Thereafter, in September of 2022, the defendant in the murder case entered a negotiated plea – he pled no contest to two reduced charges and in exchange received a sentence of 10 years DOC (with 2,594 days credit – aka 7 years). This fact is merely pointed out to support the argument that Petitioner's testimony had to have been critical to the case because without it, the defendant in that case went from a potential sentence of death to a sentence of less than 3 additional years in the Florida Department of Corrections. As a final note, the undersigned counsel is not suggesting that this type of evidence would have been presented as the truth of what took place. However, it is submitted that a very ironic inference could have been drawn and argued by counsel because of the sheer number of coincidences and outcomes addressed above.

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:** THE PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL INTERFERED WITH THE PETITIONER'S RIGHT TO TESTIFY AT TRIAL

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The Petitioner has always wanted to testify to his innocence. From day one, he was not willing to snitch on someone else because of his beliefs, but wanted to testify in his defense. However, trial counsel advised him not to testify. Counsel warned Petitioner that because of his prior convictions, it would not help their case for him to testify. He also advised Petitioner that the case they had presented so far against the government's evidence was good and didnt need his testimony for help. The problem is, counsel did not advise Petitioner that if he testified to the correct number of felonies, the jury would only learn the number of the felonies instead of the charges he was convicted of. The nature of the Petitioner's prior convictions was why he did not want to testify, because he believed those would paint him in a bad light (robbery with a firearm, aggravated assault [with firearm] and trafficking in cocaine - to name a few). Petitioner did not know that if he told the jury the number of convictions he had, and he was truthful, that they would not learn the nature of said convictions. The Petitioner would have testified to his innocence. At the time of the offense, he was homeless and living on the street in a tent. On the date of the offense, he was minding his business when he was approached by law enforcement to talk about the noted murder case (in ground one above). Petitioner did not have a firearm on him, or near him. He would have testified about the State's consistent inquiry into him being a witness in the other case. (continued on next page)

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

*GROUND TWO FACTUAL BASIS (continued from Petition, page 6)*

He would have testified that they told him they would make him regret his decisions, and they came through on their promise. Petitioner would have testified that he never saw a gun that day until Detective Pandak miraculously located it by the tent and claimed it belonged to him. Petitioner had numerous prior convictions, but he had never gone to trial on any of his prior cases and thus, was relying entirely on counsel's advice. It was because of counsel's advice that Petitioner did not testify. Had counsel advised him correctly, Petitioner would have testified to these facts and told the jury that he was innocent.

(2) If you did not raise this issue in your direct appeal, explain why:

Claims alleging ineffective counsel are not appropriate for appellate review and are lawfully raised in a postconviction proceeding, such as the instant pleading.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:** PETITIONER IS ENTITLED TO A NEW SENTENCING HEARING BECAUSE (1) COUNSEL WAS DEFICIENT IN HIS REPRESENTATION AT HEARING AND (2) HIS SENTENCE IS ILLEGAL

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The Petitioner was subject to a 15 year minimum term of imprisonment on his one count because of his classification under the ACCA. The maximum sentence that he faced was life imprisonment. Pursuant to the guidelines, the guideline imprisonment range was from 188 to 235 months. Petitioner ultimately received a sentence at the top of the guidelines - 235 months. During sentencing, counsel argued that the ACCA did not apply to Petitioner because his prior conviction for trafficking out of Georgia did not qualify. Counsel also argued that an upward variance was not appropriate because the criminal history is adequately represented in the PSR and guideline range. The government then sought to introduce evidence and rely on cases that had been dismissed (and did not result in convictions) to which counsel objected. However, they were ultimately heard on and considered by the district court. Counsel summarized his understanding of the two cases and argued that he should not be penalized for them, or have the Court consider them, because he had exercised his constitutional rights and thats why they were dismissed. Counsel stated, "From what I see is in 2012, Mr. Wilkerson was stopped in a vehicle with another individual. And as a result of that stop -- you know, it was a traffic stop for window tint, invalid tag, whatever it was, but it was a traffic stop -- and he was charged as a result of that with trafficking in, I think it was, cocaine, or some drug like that. (continued on next page)

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Claims alleging ineffective counsel are not appropriate for appellate review and are lawfully raised in a postconviction proceeding, such as the instant pleading.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐ No ☐

The following is a continuation of the quoted transcripts.

> So -- but they never -- nobody showed his possession of it other than he was in the car with the drugs.

> At any rate, the case progressed and then the case was nollied by the state attorney in Alachua County, and the reason given for the nolle was because the defendant, Mr. Wilkerson, was going to be a witness. In the mean time -- so the case is nollied.
> In the mean time, in 2013, he is embroiled in this dispute with Michael Sumpter over in Levy County, Florida. And as a result of that they charge him with … aggravated battery with a deadly weapon.
> …
> So he was charged in Levy County. So that case rocked on and then the state let speedy trial run so then he obtained a dismissal -- a discharge in that case in Levy County.

> After he obtains the discharge by speedy trial in Levy County the state reinstates the charges in Alachua County. And it's clear -- it's clear as the nose on your face that they reinstated the charges because they were mad at him from the Levy County episode where he was discharged under speedy trial.

> So at any rate they file against him in Alachua County and then the case progresses.
> …
> So then his attorney files a motion to suppress and obtains suppression of the drugs based upon an illegal search. So then the state files the second nolle in that case.

> Now, when I say overall why the Court shouldn't consider this, if you just back off and look at this, in Levy County this man was exercising the constitutional right to speedy trial. And the state failed to accord him a speedy trial. He exercised his constitutional right and was discharged.

It comes back to another case that's been dismissed and then re-filed. He exercises his constitutional right against unlawful searches in that case and vindicates his rights that the search was unlawful and then that case goes away.

So what this man has done is twice exercised valid constitutional rights to not be convicted in these two cases.

Now Mr. Elsey comes before this Court -- who, incidentally was the state attorney I believe during all of this time and was probably well-aware of these transactions with Mr. Wilkerson -- so we come back to this Court and now the government wants this Court to impose penalties, additional penalties, on this man because of his exercise of his constitutional rights in those other cases. And I think that's an unfair treatment of Mr. Wilkerson and the Court should not consider these cases.

(Doc. 119 at 26-28). After the testimony was taken, Mr. Elsey explained why the two cases were important for consideration and introduced exhibits associated with the two cases.

And in addition to the shooting incident that Corporal Martin just testified to; yes, these documents and the outline that I am going to provide -- or intended to provide to the Court -- would just kind of help explain how things played out. Because there was some significant interplay not only between these two cases, but also between another homicide investigation that the defendant was at times cooperative with, and at times uncooperative with.

THE COURT: That's the one that was addressed at trial?

MR. ELSEY: No, sir. Completely separate.

THE COURT: What does all that stuff about the other homicide thing have to do with today's sentencing?

MR. ELSEY: Again, it goes to the context of how these cases became intertwined and kind of went through the system, and ultimately not resulting in conviction but still being relevant

conduct that the government is asking the Court to consider in evaluating –

THE COURT: So you're asking from these documents for me to make a finding that he was involved in an additional homicide that we have not addressed yet?

MR. ELSEY: No, sir. I am not asking you to make that finding. I am asking you to hear the full context of what took place over these couple of years, from 2012 into 2015, probably, and evaluate that as you are considering the factors appropriate for sentencing.

THE COURT: Here is what we'll do. When Mr. Hatfield is finished reading those, I will take a look at those documents. I will hear your outline. I am not sure how much more that would matter beyond the issue about whether he did this shooting with MS, or not. But I will hear what you are going to say about that before ruling on the admissibility of those documents.

(Doc. 119 at 51-52). Mr. Elsey then walked the Court through an outline of the cases.

So August 14th, 2012, is the origination of the Alachua County trafficking case. It's documented in Government's Exhibit 1, where Mr. Wilkerson was traffic stopped in Alachua County, arrested on state charges of trafficking in cocaine.

On August 22nd of 2012, the state attorney's office filed a no-information in that case so that Mr. Wilkerson could commence working with the Drug Enforcement Administration and/or the drug task force as an informant.

On December 3rd of 2012, there was a homicide of a William Redd up in Monteocha, M-o-n-t-e-o-c-h-a, which is in the rural northern part of Alachua County.

As Mr. Wilkerson had recently become a DEA informant, and as Mr. Redd was a DTF informant, here in Alachua County against an individual in Ocala, law enforcement quickly began reaching

out to contacts in the narcotics world in Alachua and Marion counties in an attempt to gather information about why Mr. Redd was killed.

That led to Mr. Wilkerson providing information to his handling or supervising officer about the murder itself being a hit that was ordered by Willie Brooks, who was a leader of a drug trafficking organization in Marion County, because

Mr. Redd, the victim of that homicide, had acted as a confidential informant and made trafficking amount purchases of cocaine from Mr. Brooks leading to his arrest and charge.

So Mr. Wilkerson began providing that information, but it was largely on an informal basis.

And after the homicide occurred, again December 3rd, 2012, the state attorney's office in Alachua County refiled, or filed an initial information in the trafficking case against Mr. Wilkerson, but subsequently nol prossed those charges, indicating on the nol prosse form, that's in Government's Exhibit 1, that the defendant was being used as a State's witness. That indication is in reference to the 2012 William Redd homicide. On September 1st of –

THE COURT: The nol prosse just says that he was used as a witness. The other thing is just what you are saying, or does the nol prosse say he was used as a witness in that particular case?

MR. ELSEY: The document itself says it was being nol prossed because he was being used as a state witness. I am telling the Court that it is because he was used as a state witness in the William Redd homicide case, of which I assisted initially in the prosecution of as an assistant state attorney, and subsequently was the lead prosecutor for a year and a half or two years before I left to join the US Attorney's Office.

On September 1st, 2013, as we have now heard from Corporal Martin, Mr. Wilkerson shot Michael Sumpter in Williston, and was subsequently arrested a couple days later, September 5th, 2013.

The assistant state attorney who was handling the William Redd Alachua County homicide case, that I referenced, directed the Levy County assistant state attorney to refrain from filing that charge until he could negotiate with Mr. Wilkerson's attorney to take a formal sworn statement in that

William Redd homicide investigation, which had never been done up to that point because of Mr. Wilkerson's reluctance to go on record.

Those negotiations, unfortunately, dragged out for a considerable period of time. And ultimately the assistant state attorneys involved, both in Levy County and Alachua County, allowed speedy trial to lapse during the negotiation process.

And Mr. Wilkerson's attorney at the time filed a notice of expiration of speedy trial and a motion for discharge, which was granted on March 13th, 2014, with prejudice, forever foreclosing the possibility that the state could proceed on Mr. Wilkerson's Levy County shooting case.

THE COURT: Unless they appealed; right?

MR. ELSEY: No, sir. The charges were never filed prior to expiration of the speedy trial period. And he filed a motion of expiration and motion for discharge, which was granted, and there is no coming back from that.

After he filed the motion for discharge in that Levy County shooting case, Alachua County refiled their trafficking charges that were previously dismissed based on his cooperation in the homicide.

His attorney filed a motion to suppress evidence in the trafficking case on February 12th, 2015. On April 21st, 2015, the trial court granted Mr. Wilkerson's motion to suppress based on a finding that the traffic stop had been unlawfully prolonged in order to conduct a K9 sniff.

With the evidence suppressed the state had no other means by which to proceed on the trafficking case, and those charges were ultimately, and finally, nol prossed on May 11th of 2015.

Subsequent to dismissal of the shooting case and nol prosse of the trafficking case, and when the defendant no longer had any pending state criminal charges of any kind, he did appear at a deposition in that homicide case where he recanted all cooperative information that he had previously provided to law enforcement.

Of note, I do believe it is relevant for the Court's consideration, when Mr. Wilkerson's had been cooperative at the initial stages of that 2012 homicide investigation his basis of knowledge -- how he knew about the murder itself, and the fact that it was a hit -- is he claimed that he had actually been solicited himself by the leader of the drug trafficking organization to commit the murder before it was committed by somebody else, but that he was not offered a sufficient amount of money to carry-out the homicide.

And that is, again, just kind of a contextual overview of how things transpired stemming from his initial arrest on the trafficking in 2012 in Alachua County, through the shooting, and ultimate dismissal of those charges.

As Corporal Martin has testified, and I would argue to the Court, the evidence I believe demonstrates that Mr. Wilkerson did, in fact, shoot Mr. Sumpter.  And that that act of violence is something that the Court should, and certainly is permitted to, take into consideration in evaluating his past conduct for sentencing purposes.

(Doc. 119 at 53-58). The Court ultimately did not consider the "timeline" given by Elsey because they weren't substantiated by evidence and the Court was not sure which parts would matter in any event. (Doc. 119 at 61). Counsel argued that the enhancement under the ACCA adequately punished Petitioner and there would be no reason to go upward within the guidelines, or go beyond. The government argued that Petitioner's criminal history was under represented by his score and the pattern of criminal conduct was the most critical aspect that the Court should consider. The

Court, in sentencing Petitioner to 235 months, stated the following for its support of said sentence:

> I think the most important consideration here is protection of the public. He is an armed career criminal, with a significant prior criminal history including convictions for armed robbery and convictions for aggravated assault. Those qualifying offenses for the armed career criminal were very serious things.
>
> This offense obviously involved possession of a firearm which can lead to future harm. There is really no good reason for someone with that criminal history to have the gun. So I think the protection of the public is an important factor here. I also think deterrence, both of him and others, is an important consideration. There is a life-long criminal history here including a variety of crimes, battery, a lot of drugs offenses, and some violent offenses. The offense here was a serious one. So those are reasons that I think support that sentence.

(Doc. 119 at 72-73). Counsel did not adequately argue for a sentence at the low-end. Counsel mentioned the facts from the convictions in the PSR, but not to the point they held any merit. The prior convictions revealed a pattern of behavior and punishment, which did not support a sentence any higher than 15 years. From the age of 18 years old through 26, Petitioner was engaged in a pattern of criminal activity that involved drugs and violence. Of importance is the fact that any violent allegations were not at the hands of Petitioner, but of those he was associated with. It is that fact that reveals why Petitioner was never sentenced to anything significant prior to the offense at issue in this case. Out of his Florida felony convictions, the highest sentence he received was 2 years of incarceration. The longest term of incarceration that he was sentenced to was the result of his Georgia conviction – 10 years. However, he only served three years of that sentence in prison. Petitioner's incarceration began on January 5, 2006 and he was released on March 11, 2009 – a mere three years later. However, pursuant to the Georgia Department of Corrections, the maximum release date (i.e., if he served every day of the sentence imposed) would have been August 11, 2015 – showing how early he was released. Counsel should have argued, in response to the government's heavy reliance on the under representation of his criminal history, was the lack of prior punishment that Petitioner received. Specifically, how a fifteen year period of incarceration

now would be so significant as punishment, in comparison to what he had previously been given, that it would be more than enough to protect the public. Counsel should have also revealed the information noted in ground one and two, which ironically Elsey mentioned (partially) in his argument. Counsel should have also discussed how the underlying ACCA charges were improperly categorized or at least attempt to minimize why a low sentence waws appropriate because they shouldn't be considered under the ACCA (i.e., the robbery and assault count were not "violent" as defined by law" because Petitioner wasn't the person who was violent). Further, counsel should have argued that although lawful, the four level enhancement for having an obliterated serial number was an enhancement enough that a fifteen year sentence was the maximum he should get, since there was no evidence that he knew the serial number had been removed. In addition to counsel's representation at the sentencing hearing, the Petitioner's sentence is now illegal as a result of changed law. Specifically, the Petitioner's conviction for trafficking no longer satisfies the definition of a serious drug offense because of the change in definition of elements.

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND FOUR:** _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐      No ☐

    (2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐      No ☐

    (2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐ No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Yes, all grounds raised herein are being raised for the first time. Arguments based on ineffective assistance of counsel are appropriately raised in a Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 and not on direct appeal.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?  Yes ☐  No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At the preliminary hearing:

(b) At the arraignment and plea:

(c) At the trial:
Anderson Hatfield, PO( Box 2085, Keystone Heights, FL 32656

(d) At sentencing:
Anderson Hatfield, PO( Box 2085, Keystone Heights, FL 32656

(e) On appeal:
Rachael Reese, O'Brien Hatfield Reese PA, 511 W Bay Street, Suite 330, Tampa FL 33606

(f) In any post-conviction proceeding:
Rachael Reese, O'Brien Hatfield Reese PA, 511 W Bay Street, Suite 330, Tampa FL 33606

(g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?  Yes ☐  No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?  Yes ☐  No ☑

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?  Yes ☐  No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

The Petitioner was sentenced to 235 months on December 1, 2020. The judgment was entered on December 4, 2020. The Petitioner then appealed his judgment and sentence to the Eleventh Circuit Court of Appeal. On May 16, 2022, the Eleventh Circuit affirmed Petitioner's judgment and sentence. However, Petitioner then had ninety days to file a petition for writ of certiorari to the United States Supreme Court, making his sentence final for purposes of the instant motion on August 14, 2022. Thus, Petitioner had until August 14, 2023 to file the instant petition. As a result, this petition is timely filed.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)  the date on which the judgment of conviction became final;

(2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the foliwing relief:

Petitioner is requesting that this Court vacate his judgment and sentence, or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on ___4/25/23_____
(month, date, year)

Executed (signed) on ___4/25/23_____ (date)

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.