UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JAMES FARRELL WILKERSON  :
                                                          :

v.  :  Case No.:  1:19-cr-00027
                                                         :                       1:23-cv-00207

UNITED STATES OF AMERICA  :

**REPLY TO THE GOVERNMENT'S RESPONSE TO
DEFENDANT/PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2255 TO
VACATE, SET ASIDE, OR CORRECT SENTENCE**

      COMES NOW, the Defendant/Petitioner, JAMES FARRELL WILKERSON, by and through the undersigned counsel, and files this Reply to the Government's Response to Petitioner's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence. Wilkerson will address each ground separately below. The absence of any rebuttal is not, however, a waiver or abandonment of any claim or argument made previously. For arguments not addressed herein, Wilkerson stands on arguments presented in his original Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.



## **Ground One**

The government contends that Wilkerson is not entitled to relief because he has not satisfied either prong under Strickland. For the following reasons, Wilkerson strongly disagrees. First, the government argues that Wilkerson has not made a showing that the Court would have allowed evidence about a four-year old, remote and irrelevant murder case simply to suggest that he was being pressured to be a state witness. However, the arguments presented in Wilkerson's pleadings are the very definition of a showing, and that showing is supported by the law and facts of this case. The government points to the fact that the murder was four-years old and thus, remote in time to the offense at issue in this case. Wilkerson submits this argument is incorrect because the government is focusing on the wrong time period – the relevant time is not when the murder of William Redd took place, but rather, the prosecution of the men who were accused of killing him. pursuant to the court records, the victim in that case had been murdered in 2012 and no suspects were arrested until 2015, three years later. Yet, as thoroughly explained in Wilkerson's memorandum and petition, the actual criminal case prosecuting the suspects was still open at the time of Wilkerson's trial – making it relevant and not remote in the slightest.

Additionally, the government's suggestion that this evidence was irrelevant is unfounded and baseless. At trial, counsel challenged the DNA evidence and argued that law enforcement's testimony about where the firearm was located was not credible, and they were testifying as such because they had mishandled the evidence

(aka why the DNA was on it). Even with just that theory of the case, any evidence about motive or why a jury should question their credibility was absolutely relevant. Pursuant to the pattern jury instructions concerning witness testimony, the jury is told to question the credibility and to ask the following questions.

> **B5**
> **Credibility of Witnesses**
>
> When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.
>
> To decide whether you believe any witness I suggest that you ask yourself a few questions:
>
> - Did the witness impress you as one who was telling the truth?
> - Did the witness have any particular reason not to tell the truth?
> - Did the witness have a personal interest in the outcome of the case?
> - Did the witness seem to have a good memory?
> - Did the witness have the opportunity and ability to accurately observe the things he or she testified about?
> - Did the witness appear to understand the questions clearly and answer them directly?
> - Did the witness's testimony differ from other testimony or other evidence?

This type of evidence would have been offered to answer these questions – making it entirely relevant. This was not a black and white, open and shut case for the government. Instead, there was challenges to the credibility of the only pieces of evidence that linked Wilkerson to the offense. Thus, any argument that would have provided an explanation as to why the credibility challenges weren't unreasonable

would have been more than helpful, and any reasonable attorney in a similar setting would have acted the same.

Ironically, as the government concedes in its closing remarks as to Ground One, "[t]he prospects at trial, for defendants such as this, is so hopeless, that colleagues will talk about you for years if, as a prosecutor, you lose this one." (Doc. 135 at 13). The question then becomes, why in the world would Wilkerson have taken such a risk? Especially when he had so much to lose because of his prior convictions? What reasonable probability would a defendant, who is familiar with the system, take such a risk when the alternative was a significantly lower plea deal? A Defendant who was set up and was innocent of the crime at hand. Through the government's own pleading, the only real direct evidence was the DNA match, and the remaining evidence was circumstantial. Wilkerson chose to exercise his right to go to trial, and counsel presented a defense that challenged that ironically strong DNA match. The government's response could almost be read to suggest that any attorney who went to trial and challenged this perfect DNA evidence was deficient – therefore, suggesting that counsel's entire strategy and representation was questionable. In reality, counsel's representation was only deficient because it fell short in adequately presenting that theory of innocence – one that could be seen as risky unless there was evidence offered in support. A challenge to the DNA, and the officer's credibility, without an explanation as to why they would want to secure a conviction for this "straightforward § 922(g) conviction" rendered counsel's representation deficient. Had counsel acted differently, the jury would not have returned a verdict of guilty.

**Ground Two**

The government's response seems to focus entirely on how poorly Wilkerson's testimony may have been received because of his apparent lack of credibility as a "dope-smoking, ninth grade-drop out with a horrendous criminal history…" (Doc. 135 at 14). As an initial point, the descriptive words offered by the government to try and justify why counsel could be effective in any advice that Wilkerson not testify are amateur and clearly just an attempt to try and disparage Wilkerson's credibility in his claims. Ironically, the jury would only have learned that Wilkerson had a criminal history – a fact that the jury already knew because the parties stipulated to the fact that Wilkerson was a convicted felon and knew he was such. Regardless, the government's attempt to distract from the actual issue falls short.

The government cites to the response given by counsel, and attached to its pleading, as to why Wilkerson has failed to establish that counsel was deficient. (Doc. 135 at 15). The government argues that counsel's explanation, or strategy therein, is reasonable and not deficient performance. Counsel stated that his advice was that Wilkerson not testify because the following:

> To take the stand, he would have damaged his defense if he told the truth, or if he didn't tell the truth, he would have committed perjury. For example, if he had taken the witness stand and denied that the gun was his or that he had possessed the gun, on cross-examination it would have been fair questioning for the government to ask him whether he had ever possessed a gun and to ask him if he had ever shot anyone.
> My investigation revealed multiple eyewitnesses to the shooting of Michael Sumter. My investigation further revealed that this shooting was unprovoked and would have cast Mr. Wilkerson in a very bad light. If he denied the shooting of Michael Sumter, the government could have rebutted that with eyewitnesses to include a description of the egregious circumstances of the crime.

5

(Doc. 135-2 at 1). Although the word strategic is not offered in the explained response, arguably that is what counsel's response reflects – his strategy or reasoning behind why he acted in the manner he did. It has long been held that strategic decisions made by counsel cannot be seen as deficient under <u>Strickland</u>, so long as that decision was reasonable and based on an investigation of options. <u>See</u>, <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000). Although counsel is not required to investigate every option before making a decision, there must a reason not to further that query.[1]

It is respectfully submitted that counsel's alleged reasoning behind his advice is not reasonable, and thus, cannot be excused as strategy or effective. Rather, if that is the basis for why he advised Wilkerson not to testify, his representation was deficient by his own admissions. Pursuant to counsel's comment, he believed that if Wilkerson took the stand and testified that he did not own the gun, nor had he possessed the gun that day, "it would have been fair questioning for the government to ask him whether he had ever possessed a gun and to ask him if he had ever shot anyone." The only questions that would be appropriately asked on cross-examination were those that (1) were relevant to the charge at issue and (2) were relevant because the direct examination had opened the door to some sort of impeachment evidence.

---

[1] If this Court were to rely on the response of counsel, and is leaning towards a finding of strategy, the undersigned submits that a hearing is appropriate. <u>See</u>, <u>Strickland</u>, 104 S.Ct. at 2066 (noting that "[An] inquiry into counsel's conversations with the [petitioner] may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." … [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.")).

The question posed by counsel reflects an attempt for the government to impeach Wilkerson, but the type of question that counsel suggests is improper. If Wilkerson had testified that he did not possess or own the firearm that he was charged with possessing in this case, the government could ask him if he had ever possessed a firearm before (which if he answered truthfully, they couldn't go much further). But they would not be able to ask him if he had ever shot someone. Not only would that question go far outside the scope of direct-examination, it would not even be relevant for impeachment purposes or otherwise. Further, it would not be admissible as any probative value would be outweighed by the prejudice. As a result, counsel's belief that the government could cross-examine him on that matter, and that is why he told him not to testify, is unreasonable and not supported by the law.

The second portion of counsel's response, concerning Michael Sumter, seems to infer that the actual facts of that case would have somehow become relevant if Wilkerson took the stand and testified. However, that would not be the purpose of mentioning Sumter's case, nor would it be appropriate for either party to get into the facts. The only fact that was relevant was the fact that Wilkerson was a desired witness. At the sentencing hearing, counsel reiterated some of the facts that were associated with the Sumter case when asked by the Court about the connection and thus, a review of that portion of the record will support the instant argument, rather than the government's. At best, counsel's allegations presented by the government suggest that this matter is appropriate for an evidentiary hearing so further inquiry around this alleged strategy can be questioned and presented.

7

When reviewing the allegations made by Wilkerson in his pleadings, even when taken in consideration with the government's response, it is respectfully submitted that he has satisfied his burden under Strickland.

### Evidentiary Hearing

Pursuant to Title 28, United States Code, Section 2255,

> Unless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief, the court *shall* cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b) (emphasis added). "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002). "The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only *allege*-not prove-reasonably specific, non-conclusory facts that, if true, would entitle him to relief." Id. at 715 n. 6 (emphasis in original). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." *Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir.1989).

Wilkerson has alleged facts that, if true, would entitle him to relief. The government's response, including counsel's statement, is not sufficient to overcome the need for a hearing and instead, creates an even larger necessity to entertain this

matter at a fact finding juncture. As a result, this Court should grant an evidentiary hearing on the above noted matters.

## CONCLUSION

WHEREFORE, the Defendant/Petitioner, JAMES FARRELL WILKERSON, by and through undersigned counsel prays this Honorable Court will grant the requested relief and vacate his judgment and sentence. In the alternative, petitioner requests that this matter be set for an evidentiary hearing on the issues discussed above.

By: /s/ Rachael E. Reese
Rachael E. Reese, Esquire
Florida Bar Number: 0111396

Rachael Reese, P.A.
2202 North Westshore Boulevard
Suite 200
Tampa, Florida 33607
Direct:	(813) 705-8239
Email:	rer@rachaelreesepa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 17, 2023, a true copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to counsel of record.

By: /s/ Rachael E. Reese
Rachael E. Reese, Esquire
Florida Bar Number: 0111396w